Law Offices of Joshua F. Fannon
550 South Alaska Street, Suite 203
Palmer, AK 99645
Phone: (907) 746-0493
Fax: (907) 746-0490

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

CORINNE LINDFORS, )
)
Plaintiff, )
)
v. )
) Case No. 3AN-20-06589 CI
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE )
COMPANY, )
)
Defendant. )
_____ )

# COMPLAINT

Plaintiff Corinne Lindfors, by and through her attorney, the Law Office of Joshua Fannon, and for her Complaint, hereby states and alleges as follows:

## THE PARTIES, JURISDICTION & VENUE

1. Plaintiff Corinne Lindfors is and was at all relevant times a resident within the third-judicial district, State of Alaska.

2. Defendant State Farm Mutual Automobile Insurance Company [hereinafter "State Farm"] is an insurance company licensed and authorized to do business in Alaska. State Farm sold three separate automobile insurance policies to Alaska residents Corinne Lindfors and her husband, identifying the Lindfors as the "named insureds."

3. This Court has jurisdiction pursuant to AS 22.10.020.

4. When there is "no agreement" between the insured and State Farm as to the amount of compensatory damages the insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle, State Farm's insurance contract states that the insured "shall . . . file a lawsuit, in a state or federal court" against his or her insurer. Pursuant to the contract language requiring the insured to file suit, but giving the insured the option of filing in either state or federal court, Plaintiff hereby chooses her option of suing in State Court, within the third judicial district where her insurance claims arose.

## GENERAL ALLEGATIONS

5. Corinne Lindfors and her husband purchased three automobile insurance policies from State Farm which were all in effect on January 15, 2019. In each of the 3 automobile insurance policies Ms. Lindfors was a "named insured." This meant that a "special relationship" arose between Ms. Lindfors and State Farm as a consequence of her and her husband's purchase of "first-party" coverage with State Farm. The special relationship between State Farm and Ms. Lindfors meant that State Farm owed fiduciary duties to Ms. Lindfors, as well as the covenant of good faith and fair dealing.

6. The three automobile insurance policies, referenced in paragraph 5, that were purchased from State Farm by the Lindfors were the following: (a) Policy no. 085-0433-D09-02D insuring the Lindfors' 2012 Ford F150 pick-up; (b) Policy no. 081-7113-F28-02D insuring the Lindfors' 2003 Ford Expedition; and (c) Policy no. 081-7114-F28-02E insuring the Lindfors' 1984 GMC S15 pickup.

7. Each auto policy identified in paragraph 6 that State Farm sold to the Lindfors provided UM/UIM coverage in the facial amount of $250,000 "each person"/$500,000 "each accident" in exchange for payment of premium. Each auto policy identified in paragraph 6 that State Farm sold to the Lindfors provided med pay coverage in the amount of $25,000 "each person" in exchange for payment of a premium.

8. Each auto policy identified in paragraph 6 also called for "supplemental payments" to be made by State Farm in addition to the compensatory damages payable under the UM/UIM coverage, specifically payment of limited "Civil Rule 82" attorney's fees, interest, and "taxable costs."

9. Each auto policy identified in paragraph 6, contained, by endorsement, an exclusion stating that if UM/UIM coverage "provided by this policy and one or more other vehicle policies issued" to an insured by State Farm "applies to the same bodily injury, then . . . the [UM/UIM] coverage limits of such policies will not be added together to determine the most that may be paid." This is an "anti-stacking" clause purporting to control the extent of UM/UIM limits when State Farm issued one or more policies to the same insured. Each auto policy identified in paragraph 6 did not contain any similar anti-stacking clause relative to the med pay coverages. State Farm med pay coverage under the Lindfors' policy does not say that stacking of med pay coverages is barred when State Farm issues multiple policies to an insured, each policy covering a different vehicle and requiring the insured to pay a separate med pay premium under each policy. Reading, State Farm's policy as a whole and having paid separate

premiums for med pay under the 3 policies State Farm issued to the Lindfors, a reasonable insured's reasonable expectation is that Ms. Lindfors is entitled to stack her med pay coverage under the policies identified in paragraph 6.

10. Under its "medical payments coverage," State Farm specifically promised that it would "enforce" its "right to recover payments <u>only</u> after the insured person has been <u>fully compensated</u> for the bodily injury." (Underlining added for emphasis).

11. On January 15, 2019, Ms. Lindfors was operating her insured 2012 Ford F150 pick-up when an at-fault, underinsured motorist "T-boned" Ms. Lindfors' truck on the driver's side. The side-impact collision caused the Ford F150's driver's wheel to jerk violently in Ms. Lindfors' hands as she was gripping the wheel.

12. State Farm does not contest that the underinsured motorist is solely at fault for the January 15, 2019 auto accident and that Ms. Lindfors is legally entitled to recover compensatory damages from the owner or driver who caused Ms. Lindfors' bodily injury.

13. The bodily injuries Ms. Lindfors' suffered as a result of the January 15, 2019 accident include, but are not limited to the following: (a) a complete rupture of the left thumb ulnar collateral ligament; (b) a partial thickness tear of the distal attachment of the right thumb ulnar collateral ligament; (c) a partial thickness tear of the distal attachment of the volar plate of the right thumb metacarpal phalangeal joint; (d) a partial thickness articulator tear of the supraspinous tendon in Ms. Lindfors' left shoulder; (e) a sprain

Page 4 of 17

Complaint
Corinne Lindfors v. State Farm Mutual Insurance Company
Case 3:20-cv-00178-SLG   Document 1-1   Filed 07/24/20   Page 4 of 17

of the ligaments of cervical spine; and (f) a herniated disc at C6-7 that compromises the medial aspect of the right neural foramen;

14. The reasonable and necessary medical care Ms. Lindfors underwent to treat the bodily injuries she sustained in the January 15, 2019 auto accident include, but are not limited to, the following: (a) January 30, 2019 surgery to repair the complete tear of the left thumb ulnar collateral ligament; (b) October 7, 2019 arthroscopic left shoulder surgery; and (c) January 6, 2020 right thumb surgery.

15. Ms. Lindfors sustained lost wages as a result of the January 15, 2019 bodily injuries she suffered reasonably valued at $3,410.80.

15. Ms. Lindfors timely notified State Farm of both her med pay claim and her UIM claim following the January 15, 2019 accident.

16. Despite timely notice of Ms. Lindfors' med pay and UIM claims arising from the January 15, 2019 accident and up through the date of Ms. Lindfors suing State Farm, State Farm never supplied Ms. Lindfors with proposed releases so that State Farm's Claims department(s) could gather any information it wished to consider in evaluating and adjusting Ms. Lindfors' claims. Nevertheless, State Farm's auto policy indicates at form 9802A at page 32, paragraph 6, that the State Farm's normal claims handling practice is to collect written records authorizations from insureds so that State Farm may collect any medical records, bills or wage loss information. The policy provides that only if the holder of the information refuses to supply the information despite the

550 South Alaska Street, Suite 203
Palmer, AK 99645
Phone: (907) 746-0493
Fax: (907) 746-0490

Complaint
Corinne Lindfors v. State Farm Mutual Insurance Company

insurer's authorization then at State Farm's request, the person making a claim "must obtain the information and promptly" supply it to State Farm.

17. On March 11, 2020, Ms. Lindfors asked State Farm Claims if it felt it was "missing" any information. Ms. Lindfors got no timely response. On March 11, 2020, Ms. Lindfors wrote to State Farm saying: "If State Farm requires releases of some kind, it should immediately propose a reasonable release conforming with Alaska law." State Farm did not timely respond to this offer, propose any releases for Ms. Lindfors' signature, or timely state there was anything it was "missing" which was needed to complete its evaluation of Ms. Lindfors' UIM claim.

18. On April 28, 2020, State Farm wrote to Ms. Lindfors (in care of her attorney) failing to even proof its letter. The first line of the letter reads: "We have complete [sic] our evaluation of the underinsured motorist claim of Corinne Lindfors as referenced above [as claim no. 02-7303-R54.]"

19. On May 12, 2020, Ms. Lindfors wrote to State Farm, again asking the insurer to supply reasonable releases for Ms. Lindfors' signature if such releases were needed notwithstanding State Farm "complet[ing] its evaluation" and passing the deadlines to tender the UIM insurance proceeds. Prior to Ms. Lindfors' filing suit, State Farm never supplied releases for Ms. Lindfor to sign.

20. In the course of its dealing with Ms. Lindfors in regards to her UIM and med pay claims, State Farm has engaged in the following unreasonable acts or omissions in

Complaint
Corinne Lindfors v. State Farm Mutual Insurance Company

reckless disregard of Ms. Lindfors' interests and in breach of contract and in breach of the covenant of good faith and fair dealing:

a. State Farm unilaterally decided the "total claim value" for the injuries and damages Ms. Lindfors sustained in the January 15, 2019 accident to be $152,874.12 without any reasonable basis;

b. When Ms. Lindfors raised legitimate and detailed questions as to the basis, if any, for State Farm's "total claim value" decision, State Farm refused to timely explain the basis or its valuation decision or explain how it was consistent with its own policy language or Alaska law even after Ms. Lindfors' gave State Farm additional time to consult with an Alaska lawyer;

c. In violation of Alaska law and its own policy language, State Farm offered that Ms. Lindfors settle her UIM claim without State Farm tendering any supplemental payments required to be paid by State Farm under her UIM coverage as "add-ons";

d. In violation of its own policy language, State Farm proposed that it get reimbursed for $25,000 "off the top," without Ms. Lindfors first having been "made whole." This is an example of State Farm putting its own interests ahead of the interests of its first party insured, which is the definition of "bad faith;"

e. State Farm offered a mere "$77,874.12" in UIM money "inclusive of liens" knowing that it was not even sufficient to cover Aetna's lien, calculated to be $108,653.03 as of May 16, 2020;

f. In violation of Alaska law, State Farm proposed automatic offsets to the payable UIM proceeds without any reasonable basis for assuming that the offsets were required to avoid a "double recovery" for Ms. Lindfors;

g. In violation of State Farm's own claims investigation procedures as described in its insurance policy, State Farm did not propose or ask for releases for Ms. Lindfors' medical records before or at the time it was called up by Ms. Lindfors to pay all that was payable under her UIM insurance and prior to "complet[ing] its evaluation" of Ms. Lindfors' UIM claim. This means that State Farm decided to ignore its own internal procedures and failed to reasonably and timely investigate Ms. Lindfors' UIM claim when called upon to act. Instead, State Farm chose to speculate that the shoulder repair claim was not accident-related without any reasonable affirmative action to resolve State Farm's supposed "questions." State Farm's conduct in raising unsubstantiated doubts in lieu of any reasonable investigation of any supposed causation issue violated the principles articulated in <u>Lockwood v. GEICO General Ins. Co.</u>, 323 P.3d 691 (Alaska 2014) of which State Farm had notice;

h. In violation of Alaska law, State Farm never reasonably explained to Ms. Lindfors the UIM or med pay coverage that was potentially available to her arising from the January 15, 2019 accident;

i. Even after Ms. Lindfors made reasonable inquiries, State Farm never timely explained why only $25,000 in med pay was available notwithstanding how the Lindfors had paid 3 separate premiums for med pay under 3 policies each covering a separate

vehicle and how State Farm was "unjustly enriched" if the med pay coverages were not "stacked" in a situation were Ms. Lindfors' medical bills clearly exceeded $75,000;

j. Even if State Farm was entitled to postpone the "shoulder repair" issue, State Farm's $77,874.12 counteroffer was made without a reasonable basis based on the facts available to State Farm at the time of State Farm's April 28, 2020 counteroffer;

k. When Ms. Lindfors provided specific reasons why State Farm's $77,874.12 counteroffer could not possibly be premised on a reasonable basis, State Farm refused to respond to the merits of Ms. Lindfors' objections, even after consulting with Alaska counsel. Instead, State Farm just predicted it would tender the check in the amount of its offer, thereby perpetuating the lack of a reasonable basis for its claims handling and causing further unreasonable delay;

l. State Farm unreasonably investigated Ms. Lindfors' UIM claim and the extent of her available med pay coverage in breach of the covenant of good faith and fair dealing and in reckless disregard of Ms. Lindfors' interests;

m. Despite Ms. Lindfors' specific arguments for why State Farm's acts or omissions were not in good faith and violated the contract or Alaska law, State Farm persisted with its unreasonable claims handling practices in reckless disregard of Ms. Lindfors' interests, knowing the remedy the policy required of Ms. Lindfors was that she file a lawsuit against State Farm. This means that State Farm wrote its adhesion contract in such a way as to require an insured to incur the cost of litigation to collect all that was payable under the UIM coverage, penalizing the insured with litigation costs even when

it is the insurer's unreasonable acts which has caused the "impasse" and it is State Farm which has acted in breach of contract;

n. State Farm has denied Ms. Lindfors' "each person" UIM policy limits demand without a reasonable basis;

o. State Farm has failed to investigate, evaluate, explain, or tender all available med pay benefits to which Ms. Lindfors is entitled in breach of the covenant of good faith and fair dealing, in breach of contract, and in bad faith; and

p. State Farm did not give "equal weight" to the interests of its insured, Corrine Lindfors, as it was required to do under Alaska law pursuant to the "special relationship" which arose as a result of the Lindfors' purchase of first-party insurance from State Farm.

26. Since State Farm breached the contract "first" it has no legal basis for requiring continued compliance by Plaintiff relative to any condition of coverage.

27. The reasonableness of a first-party insurer's denial of UIM benefits is judged based on what the insurer knew or should have known at the time of the denial, not based on reasons the insurer tries to develop after its denial.

28. Plaintiff is the Judicial Assistant for Superior Court Judge Kristen Stohler based at Palmer, Alaska. Everyday State Farm unreasonably delays resolution of her claims creates emotional distress and imposes financial pressure on Ms. Lindfors. Ethically, she has to forego working on any cases filed in Palmer involving Fannon Law Office, Walker & Eakes, and State Farm while her insurance claims are pending. This

significantly affects her ability to do her job because of the efforts she must take to avoid her involvement in any cases involving State Farm or any law firm representing the parties. To the extent State Farm's on-going and unreasonable delays causes her emotional distress or lost wages or impairment of her earning capacity, Ms. Lindfors expects to add such a damage claim to her prayer for relief against State Farm.

## FIRST CAUSE OF ACTION
**(Breach of Contract Under the UIM Coverage)**

29. Plaintiff incorporates by reference the allegations in paragraphs 1-28 of her Complaint.

30. Plaintiff entered into contracts of insurance with State Farm in which State Farm promised to "pay compensatory damages for bodily injury ... an insured is legally entitled to recover from the owner or driver of ... an underinsured motor vehicle" as long as the bodily injury is "sustained by an insured" and "caused by an accident that involves the operation, maintenance, or use of ... an "underinsured motor vehicle as a motor vehicle." State Farm sold the Lindfors' UIM coverage in the facial amount of $250,000 "each person," plus add-ons, including interest, limited Rule 82 attorneys' fees, and taxable costs.

31. Plaintiff sustained bodily injuries caused by an accident that Ms. Lindfors is legally entitled to recover from the at-fault underinsured motorist who was the sole cause of the January 15, 2020 auto accident which injured Ms. Lindfors.

32. Ms. Lindfors has complied with all conditions for UIM coverage under any of her State Farm policies identified in paragraph 6 of this Complaint.

Page 11 of 17

Complaint
Corinne Lindfors v. State Farm Mutual Insurance Company

Case 3:20-cv-00178-SLG   Document 1-1   Filed 07/24/20   Page 11 of 17

33. Plaintiff sustained underinsured bodily injuries in the January 15, 2019 accident referenced herein in excess of the $250,000 "each person" facial limit of UIM coverage under any of her State Farm policies identified in paragraph 6 of this Complaint.

34. Plaintiff made timely "each person" policy limits demands to State Farm for her UIM coverage on March 11, 2020 and May 12, 2020 arising from the January 15, 2019 accident and her State Farm auto policies.

35. State Farm, after declaring that it had "complet[d] our evaluation" of Ms. Lindfors' UIM claim denied her policy limits demand on April 28, 2020 and counteroffered for less than all payable UIM benefits to which Ms. Lindfors is entitled.

36. State Farm's April 28, 2020 denial of an "each person" UIM policy limits breached State Farm's insurance contract with Plaintiff.

37. After State Farm consulted with its Alaska attorney, State Farm continued its breach of contract denial of Ms. Lindfors' "each person" UIM policy limits demand.

38. Plaintiff was actually damaged by State Farm's breach of contract, entitling her to all damages allowable by law, including but not limited to an "each person" $250,000 facial limit plus all applicable add-ons allowed by Alaska law and any and all consequential damages due to State Farm's breach of contract.

39. Since State Farm's policy requires that an insured file suit to obtain her payable UIM benefits even when State Farm may be in breach of contract, Plaintiff's actual reasonable attorneys' fees is a consequential damage recoverable for State Farm's breach of contract.

## SECOND CAUSE OF ACTION
(Breach of Contract Under Med Pay Coverage)

40. Plaintiff incorporates by reference the allegations in paragraphs 1-39 of her Complaint.

41. The Lindfors purchased three separate auto policies from State Farm covering separate vehicles and under each policy identified in paragraph 6 of this Complaint, the Lindfors paid separate premiums so that each policy afforded $25,000 "each person" limits for med pay coverage.

42. Under all 3 auto policies, State Farm agreed to pay "medical expenses incurred because of bodily injury that is sustained by an insured and caused by a motor vehicle accident."

43. State Farm raised no "disagreement" that Ms. Lindfors sustained medical expenses in excess of $25,000 because of bodily injury caused by the January 15, 2019 auto accident.

44. Each of the 3 auto policies defined its "Limit" in relation to each policy's particular "Declarations Page." It was each Declaration Page's limit "under "Medical Payments Coverage—Limit—Each Person" which defined each policy's limit. None of the 3 auto policies containing med pay coverage limited the total coverage available to Ms. Lindfors to $25,000 regardless of the number of separate policies issued and regardless of the number of separate med pay premiums charged.

45. By charging separate premiums for the same med pay coverage under each of the Lindfors' 3 auto policies, State Farm will incur a windfall unless the medical payments coverage under the 3 policies is stackable.

46. Supporting a reasonable insured's reasonable expectations that the 3 med pay coverages are stackable, State Farm's "nonduplication" clause says State Farm will not pay any medical expenses under the med pay coverage that has already been paid as damages under liability coverage or UM/UIM coverage issued by State Farm to an insured. However, State Farm's "nonduplication" clause does not say that medical payments limits under 3 separate med pay coverages sold by State Farm cannot be "stacked."

47. In the course of State Farm's claims handling, State Farm refused to pay any med pay benefits exceeding $25,000 on the grounds that Ms. Lindfors' med pay coverage was "exhausted." This decision by State Farm was in breach of the Lindfors' 3 med pay insurance contracts in which State Farm agreed to pay $25,000 under each policy for medical expenses incurred by Ms. Lindfors arising from the bodily injuries caused by the motor vehicle accident.

48. Ms. Lindfors has complied with all conditions for med pay coverage under any of her State Farm policies identified in paragraph 6 of this Complaint.

49. Plaintiff sustained medical expenses due to the injuries she sustained in the January 15, 2019 accident in excess of $75,000, the total of the 3 "each person" med pay limits which apply to this claim.

50. Plaintiff has incurred sufficient medical expenses arising from the January 15, 2019 accident that State Farm's payment of $75,000 in med pay benefits would not result in Ms. Lindfors being paid twice for the same medical expense if the stacked limits of her med pay coverage is fully paid.

51. Plaintiff was actually damaged by State Farm's breaches of contract relative to her med pay claim, entitling her to all damages allowable by law, including but not limited to $75,000 in med pay plus any and all consequential damages due to State Farm's breach of contract.

## THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty & the Covenant of Good Faith and Fair Dealing & Reckless Disregard of Plaintiff's Interests)**

52. Plaintiff incorporates by reference the allegations in paragraphs 1-51 of her Complaint.

53. State Farm owes a duty of good faith and fair dealing to its named insured, Corinne Lindfors, arising from the insurance contract and implied at law due to the "special relationship" between the insurer and its first-party insured.

54. State Farm owed a "fiduciary" duty to Plaintiff including but not limited to the proper handling of her UIM claim and her med pay claim. The fiduciary duty State Farm owned to Ms. Lindfors was not diminished by any supposed "adversity" arising from Plaintiff making a first-party claim for insurance benefits to State Farm.

55. State Farm breached its fiduciary duty and its duty of good faith and fair dealing to Ms. Lindfors as to its handling for both her UIM and med pay claims.

56. State Farm's claims handling relative to Ms. Lindfors' UIM and med pay claims violated State Farm's own policy language and claims handling guidelines.

57. State Farm's acts and omissions relative to the UIM or med pay claims handling were in reckless disregard of Ms. Lindfors' interests.



58. State Farm's claims handling relative to Ms. Lindfors' UIM claim violated AS 21.36.125 and its regulations, constituting "evidence" of bad faith.

59. State Farm's breach of its fiduciary duty and duty of good faith and fair dealing was a proximate cause of Plaintiff sustaining actual damages.

60. Plaintiff has been actually damaged by State Farm's breach of its fiduciary duty and the duty of good faith and fair dealing as to her, in an amount to be decided by an Alaska jury.

61. Plaintiff claims all available damages from State Farm that are legally caused by its bad faith, breach of the covenant of good faith and fair dealing, and reckless disregard of Ms. Lindfors' interests, including but not limited to damages for emotional distress, distress and financial losses due to the financial pressure State Farm's tactics impose on her, and punitive damages in an amount to be decided by an Alaska jury.

WHEREFORE, Plaintiff prays for the following relief:

(1) Judgment in favor of the Plaintiff and against Defendant State Farm for compensatory damages in an amount exceeding the Court's jurisdictional minimum of $100,000, the exact amount to be proven at trial;

(2) An award of punitive damages against Defendant State Farm;

(3) An award of all consequential breach of contract damages, including Plaintiff's actual reasonable attorneys' fees incurred because State Farm's contract of insurance requires the insured to file a lawsuit if there is a disagreement as to payable UIM benefits even in a case of the insurer's breach of contract;

(4) An award of interest, attorneys' fees and taxable costs to the maximum extent allowed by law;

(5) Such further and other relief as the Court may deem just and equitable; and

(6) A jury is demanded as to all issues so triable.

Dated at Palmer, Alaska this 15th day of June 2020.

LAW OFFICE OF JOSHUA FANNON
Attorney for the Plaintiff Corinne Lindfors

Joshua F. Fannon
AK Bar No: 0406038
Attorney at Law

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of June 2020 a copy of the foregoing was served by U.S. Mail on the following:

State of Alaska Department of Commerce, Community & Economic Development
Division of Insurance
c/o Lori Wing-Heier
PO Box 110805
Juneau, AK 99811-0805

By: _____
Law Office of Joshua Fannon



Complaint
Corinne Lindfors v. State Farm Mutual Insurance Company