# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

CORINNE LINDFORS,

              Plaintiff,

    v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

            Defendant.

Case No. 3:20-cv-00178-SLG

## ORDER RE PENDING MOTIONS

Before the Court are six pending motions: (1) Defendant State Farm Mutual Automobile Insurance Company's ("State Farm's") *Motion* in Limine *to Exclude the Admission of Evidence Relating to Insurance and Prior Payments* at Docket 92;[1] (2) State Farm's *Motion for Evidentiary Hearing to Address Off-Sets and Potential Collateral Source Issues with Respect to UIM Verdict* at Docket 99;[2] (3) State Farm's *Omnibus Motion for Various in Limine Orders* at Docket 100;[3] (4) Plaintiff Corinne Lindfors' *Motion in Limine to Bar State Farm's "Billing Code" References and Speculations About a Treating Doctor's Supposed "Belief"* at Docket 101;[4]

---

[1] Plaintiff Corinne Lindfors responded in opposition at Docket 106, and State Farm replied at Docket 124.

[2] Ms. Lindfors responded in opposition at Docket 115, and State Farm replied at Docket 127.

[3] Ms. Lindfors responded in opposition at Docket 114, and State Farm replied at Docket 130.

[4] State Farm responded in opposition at Docket 126, and Ms. Lindfors replied at Docket 139.

(5) Ms. Lindfors' *Motion for an Evidentiary Ruling as to Certain Admissions by State Farm and Other Claim Details Being Admissible in Phase I* at Docket 102;[5] and (6) Ms. Lindfors' *Motion for Evidentiary Rulings on Issues Related to Medical Bills, Barring Reference to Payments and Insurance, and State Farm's Affirmative Defense as to "Offsets"* at Docket 103.[6] Oral argument was not requested for these motions and was not necessary to the Court's determination.

## BACKGROUND

The factual background of this case has been set forth in more detail in the Court's September 30, 2021 order at Docket 87 and December 28, 2021 order at Docket 94. The Court assumes familiarity here.

As relevant here, this litigation stems from a January 15, 2019 motor vehicle collision that occurred when Ms. Lindfors was operating a vehicle insured under a State Farm policy.[7] The other driver involved, Elizabeth Shelden, was determined to be at fault, and Ms. Lindfors settled her liability claim against Ms. Shelden for a total of $60,316.30: Ms. Shelden's $50,000 Allstate insurance policy limit, plus interest and attorney's fees.[8] State Farm has paid $25,000 of Ms. Lindfors' medical expenses under the Medical Payments Coverage ("MPC") provision of her policy

---

[5] State Farm responded in opposition at Docket 125, and Ms. Lindfors replied at Docket 133.

[6] State Farm responded in opposition at Docket 129, and Ms. Lindfors replied at Docket 138.

[7] *See* Docket 1-1.

[8] Docket 92-2 (Ex. B); Docket 92-3 (Ex. C).

and has also advanced the amount of its initial offer, $77,874.12, under Ms. Lindfors' underinsured motorist ("UIM") coverage.[9] Ms. Lindfors now seeks to recover for additional claimed damages under her UIM coverage, which has a $250,000 limit, and asserts first-party bad-faith claims against State Farm.[10]

On March 15, 2021, the Court issued an order bifurcating Ms. Lindfors' UIM claim from her bad-faith claims at trial.[11] As that order provides, "the parties will first try the UIM claim, and, only upon its resolution, try the 'bad faith' claims before the same jury."[12] Phase I, concerning the UIM claim, will simply require the jury to determine what damages were caused by the accident.[13] Phase II will address Ms. Lindfors' bad-faith claims, using the Phase I damages determination as may be adjusted by the Court, to determine the amount State Farm was responsible for paying Ms. Lindfors under her UIM coverage.[14]

---

[9] Docket 92-4 (Ex. D); Docket 92-5 (Ex. E).

[10] *See* Docket 1-1; Docket 92-1 at 1 (Ex. A).

[11] Docket 31.

[12] Docket 31 at 11.

[13] *See, e.g.*, *Bardis v. First Trenton Ins. Co.*, 971 A.2d 1062, 1069 (N.J. 2009) ("[T]he sole focus is on whether the injuries, and the medical treatment that followed, were caused by the accident and, therefore, whether plaintiff is entitled to verdict to compensate him or her for . . . damages that resulted. None of those facts has any connection to the insurer; they have only to do with the accident, the treatments, and the opinions of the doctors that bear on the question of a causal relationship.").

[14] *See* Docket 92-6 at 7 (Ex. F) ("[State Farm] will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle.").

In the pending motions, State Farm and Ms. Lindfors both request that various evidence and arguments be admitted or excluded during Phase I or during both phases of trial. Further, State Farm requests that the Court hold an evidentiary hearing between the two phases to the extent necessary to determine the application of offsets and the collateral source rule to the jury's Phase I verdict.

## LEGAL STANDARD

Relevant evidence—that which has any tendency to make a material fact more or less probable—is generally admissible.[15] However, Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In this context, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[16] Because this is a diversity action, Alaska's substantive law applies.[17]

---

[15] Fed. R. Evid. 401, 402.

[16] Fed. R. Evid. 403 advisory committee's note.

[17] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

# DISCUSSION

## I. Hearing to Address Offsets and Potential Collateral Source Issues

State Farm suggests that if the jury returns a verdict for Ms. Lindfors in Phase I, the Court must hold an evidentiary hearing before Phase II in order to determine the "net verdict."[18]  The insurer maintains that any verdict should be reduced by: (1) the $50,000 in liability coverage paid by Allstate, Ms. Shelden's insurer; (2) the $25,000 in med pay coverage paid by State Farm; and (3) the $77,874.12 advanced to Ms. Lindfors under her UIM coverage.[19]  Further, State Farm contends that reductions in any award of past medical expenses may be "warranted due to the collateral source benefits [Ms. Lindfors] received as a result of her health insurer paying the vast majority of her claimed medical expenses."[20]  The insurer notes that Aetna, Ms. Lindfors' health insurer, is only seeking reimbursement for $121,402.56 of the $263,017.90 that Ms. Lindfors has claimed in past medical expenses and that Ms. Lindfors' medical expenses were "discounted . . . downward by at least $43,556.42" as a result of Aetna's agreements with the relevant health care providers, clinics, and hospitals.[21]

---

[18] *See* Docket 99.

[19] Docket 99 at 1–2 (citing Docket 99-1 (Ex. A); Docket 99-2 (Ex. B); Alaska Stat. §§ 28.20.445(c), 28.22.221).

[20] Docket 99 at 2.

[21] Docket 99 at 2 (citing Docket 99-3 (Ex. C); Docket 99-4 (Ex. D); Docket 99-5 (Ex. E)).

State Farm asserts that a hearing is required to determine the effect of these discounts on the amount awarded, citing *Weston v. AKHappytime, LLC*, a recent Alaska Supreme Court case that held that negotiated rate differentials are subject to the collateral source rule and thus "subject to post-verdict proceedings set out in [Alaska Statute] 09.17.070 for possible reduction of the damages award."[22] That statute modifies the common law collateral source rule, providing:

> After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.[23]

AS 09.17.070 also provides that if a defendant elects to introduce evidence under the above section, the claimant may introduce evidence of (1) "the amount that the actual attorney fees incurred by the claimant in obtaining the award exceed the amount of attorney fees awarded to the claimant by the court" and (2) "the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence."[24]

State Farm contends that it is necessary to conduct this post-verdict proceeding after Phase I, noting that "before the bad faith claims can be fairly tried, the actual amount owed to [Ms. Lindfors] under her UIM coverage must be

---

[22] Docket 99 at 3 (citing *Weston*, 445 P.3d at 1028).

[23] Alaska Stat. § 09.17.070(a).

[24] *Id.* § 09.17.070(b).

Case 3:20-cv-00178-SLG   Document 149   Filed 04/27/22   Page 6 of 39

determined, which necessarily requires an evidentiary hearing to be held for the Court to decide what offsets apply to the jury's verdict during Phase I."[25]

Ms. Lindfors, by contrast, maintains that any adjustments to the jury's Phase I verdict must not occur until after both phases of trial have concluded because "[t]he fact that [State Farm] previously claimed offsets without knowing of any actual duplication is an aspect of the insurer's bad faith" to be addressed during Phase II.[26]  Ms. Lindfors also emphasizes that the party seeking an offset "still [bears] the responsibility for showing that its past payment covered *the same expenses* awarded by the jury."[27]  She suggests that "if there are disputed issues of fact such as 'what was supposedly duplicated,' then State Farm had better arrange for specific enough jury instructions during Phase I as to exactly how damages were awarded or State Farm risks not having the proof to later meet its burden to prove overlapping payments for the same expense or type of loss."[28]  In briefing on a separate motion, Ms. Lindfors also asserts that State Farm cannot make this showing because the insurer "refus[ed] to break down" what its UIM

---

[25] Docket 127 at 2 ("The total damages [Ms. Lindfors] ultimately is entitled to collect under the UIM coverage is relevant to the reasonableness of State Farm's evaluation of her claim, which is the primary issue to be addressed during Phase 2 of the trial . . . .").

[26] Docket 115 at 2, 5, 7.

[27] Docket 115 at 5 (quoting *Turner v. Municipality of Anchorage*, 171 P.3d 180, 191 (Alaska 2007)).

[28] Docket 115 at 6.

advance covered and thus it "cannot possibly show the $77,874.22 'covered the same expenses included in the jury's award.'"[29]

State Farm replies that it "does not oppose asking the jury to specifically itemize what past medical expenses it is awarding" and observes that "[s]uch an itemization is necessary to permit the Court to properly evaluate collateral source offsets for reductions made to medical charges based on Aetna's agreements with the various health care providers."[30]

The Court finds that it is appropriate to hold a hearing between Phase I and Phase II to determine the application of offsets and collateral source benefits to the jury's Phase I verdict. The Court will conduct this hearing with the understanding that Aetna's negotiation of a discounted rate with certain healthcare providers is considered a collateral source benefit under Alaska law.[31] At the hearing, State Farm will bear the burden of demonstrating that prior payments and collateral source benefits should be offset against the damages awarded by the jury in Phase I.[32] The verdict form in Phase I should direct the jury to resolve any disputed facts necessary for the Court to make this determination.

---

[29] Docket 103 at 11–12 (quoting *Turner*, 171 P.3d at 190).

[30] Docket 127 at 5.

[31] *See Weston*, 445 P.3d at 1026–27.

[32] *See Turner*, 171 P.3d at 191 (stating, when discussing the "'same injury' standard under AS 09.17.070," that "on balance, fairness favors requiring the defendant to show that its prior payment covered the same expenses included in the jury's award").

Case 3:20-cv-00178-SLG   Document 149   Filed 04/27/22   Page 8 of 39

## II. Phase I of Trial

### a. Evidence Regarding Insurance, Prior Payments, and State Farm's Status as UIM Insurer

State Farm contends that during Phase I, the Court should exclude Ms. Lindfors' insurance contract and evidence relating to: (1) the amount of Ms. Lindfors' UIM coverage; (2) prior sums paid to or on behalf of Ms. Lindfors for the January 2019 accident by her health insurer, State Farm, and Ms. Shelden; and (3) State Farm's status as Ms. Lindfors' UIM insurer.[33] State Farm suggests that this evidence should be excluded from Phase I under Rules 401 and 402 because it is "not relevant to a decision as to what plaintiff would have been legally entitled to collect from the alleged underinsured motorist."[34]

In the alternative, State Farm asserts that the evidence should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice.[35] It points to *Gibson v. GEICO General Insurance Co.*, a case concerning a UIM coverage dispute in which the Alaska Supreme Court upheld the trial court's decision to exclude evidence regarding the insurance contract, the insured's settlement with the at-fault driver, and GEICO's status as a UIM insurer.[36] There, the Alaska Supreme Court reasoned that it was proper to

---

[33] Docket 92 at 1.

[34] Docket 92 at 2–3.

[35] Docket 92 at 4.

[36] 153 P.3d 312, 317–18 (Alaska 2007).

exclude testimony regarding the insurance contract and the settlement because that evidence's "probative value on the issue of damages was slight" and "[a]s such, any probative value was easily outweighed by the danger of unfair prejudice that might result from suggesting the appropriate range of damages awards."[37] The court also rejected the insured's argument that excluding the insurance contract and evidence of GEICO's status as her UIM insurer made her "unable to explain to the jury why the parties were even litigating."[38]  Because "[t]he only disputed issue was the extent of [the insured's] damages" and "[i]t was apparent to the jury that GEICO was trying to minimize [those] damages," the court concluded that there was "no reasonable possibility that the jury was led to believe that GEICO and [the insured] were not completely adverse parties."[39]

Ms. Lindfors appears to agree that the jury in Phase I should not be informed of the amount of her policy limits, prior payments made by her health insurer and State Farm, or Ms. Shelden's liability insurance or the amount of that insurance.[40] Indeed, she has moved separately to exclude this evidence.[41]  However, Ms. Lindfors disagrees regarding evidence of State Farm's status as her insurer.  She contends that she "needs to tell the jury that State Farm is [her] 'insurer' in Phase

---

[37] *Id.* at 317.

[38] *Id.* at 318.

[39] *Id.*

[40] Docket 106 at 5.

[41] *See* Docket 103 at 6–7, 12–14.

I" in order to "avoid any possible confusion that the at-fault driver will have to pay the judgment" and to "explain 'the basic alignment of the parties,' State Farm's true role as more than a 'nominal defendant,' and assist the jury in better understanding that there is a 'self-interest,' a potential financial interest, and 'bias' underlying any effort by State Farm . . . during Phase I [to contest] the extent of Ms. Lindfors' damages or the facts of causation."[42] She cites *Myers v. Robertson*, a case in which Allstate intervened as a defendant in an intra-family lawsuit and the trial court excluded information about the insurer's "existence as the real party in interest."[43] There, the Alaska Supreme Court held that the trial court erred because "[w]ithout explaining the basic alignment of the parties, and the [insureds'] role as purely nominal defendants, there was a risk of confusing the jurors and unfairly prejudicing them against the plaintiff."[44]

Ms. Lindfors also maintains that the jury in Phase I must be informed "that the contract between Ms. Lindfors and State Farm gave rise to a special relationship between them and because of this special relationship, State Farm agreed to Process using 'Current Value Focused File Handling.'"[45] She asserts that this information is relevant because the "jury must be free to decide if State

---

[42] Docket 106 at 2.

[43] 891 P.2d 199, 200 (Alaska 1995).

[44] *Id.* at 208.

[45] Docket 106 at 3.

Farm's position at trial is contradicted by what it accepted as reliable while performing its 'Current Value File Handling.'"[46]

The Court agrees with State Farm that all references to the insurance contract and State Farm's status as Ms. Lindfors' insurer should be excluded from Phase I.[47]  State Farm's status as Ms. Lindfors' UIM insurer in Phase I is analogous to the circumstances before the Alaska Supreme Court in *Gibson*.  The court in *Gibson* specifically distinguished cases like *Myers* that involved multiple defendants and the potential for confusion regarding the insurer's interests.[48] Here, because State Farm is the only defendant, the adversarial relationship between the parties will be clear to the jury; therefore, the Court will not permit any reference to State Farm's status as Ms. Lindfors' insurer in Phase I unless application is first made outside the presence of the jury.

### b.  Claims Handling

State Farm requests that the Court exclude from Phase I evidence relating to its "investigation, evaluation and handling of [Ms. Lindfors'] UIM or MPC claims," including deposition testimony from State Farm claims personnel, because such evidence is "wholly irrelevant" to the jury's determination during Phase I.[49]  Ms.

---

[46] Docket 106 at 7.

[47] The Court's decision here necessarily also extends to granting State Farm's request to exclude reference to or questions about the non-duplication language in Ms. Lindfors' policy during Phase I.  *See* Docket 100 at 7.

[48] *See Gibson*, 153 P.3d at 318.

[49] Docket 100 at 14–15.

Lindfors responds with several arguments in support of the admissibility of claims-handling evidence during Phase I, the majority of which she makes in a separate motion at Docket 102. In that motion, she contends that certain aspects of State Farm's claims handling should be admitted in Phase I because the insurer's adjusters were not "predicting what a jury would award" and thus "there is going to be no 'potential' that the jury will confuse State Farm's valuations in Phase I as admissions as to the 'ultimate issue.'"[50] She explains that "[w]ithout mentioning 'bad faith,' [she] wishes to explain" fifteen separate aspects of State Farm's claims handling to the jury in Phase I and maintains that the proposed evidence is admissible because it is relevant, will assist the jury, and "reflects admissions of a party opponent."[51] In support of the third argument, she suggests that claim file notes made by State Farm employees and an Independent Medical Examination ("IME") report are admissible in Phase I because they fall under the Rule 801(d)(2) hearsay exemption for admissions of a party opponent.[52] Further, Ms. Lindfors contends that evidence of State Farm's claims handling process must be admitted during Phase I because the "med pay adjustment . . . caused [her] private health insurance to hit an 'annual cap' and [she] had to forego medical treatment because the UIM handler would not pay any medical bills until the claim was totally

---

[50] Docket 102 at 5–6.

[51] Docket 102 at 7–15 (capitalization altered).

[52] Docket 102 at 15–18.

Case 3:20-cv-00178-SLG    Document 149    Filed 04/27/22    Page 13 of 39

resolved."[53]  Thus, she asserts, without claims-handling evidence, the jury will "have an incomplete picture of [her] total damages as her delay in treatment is an aspect of her damages."[54]

The Court finds that evidence regarding State Farm's claims-handling process is not admissible in Phase I.  The Court disagrees with State Farm's assertion that the evidence is wholly irrelevant; the insurer's conclusions regarding Ms. Lindfors' injuries and medical expenses "ha[ve] a tendency" to make certain material facts in Phase I "more or less probable than [they] would be without the evidence."[55]  However, the Court will exclude the evidence pursuant to Rule 403 because its probative value in this regard is minimal and is substantially outweighed by the danger of unfair prejudice and misleading the jury.  Phase I is intended solely for the jury to determine what amount of damages, if any, Ms. Lindfors incurred as a result of the January 2019 accident.  This requires the jury to determine the issue as if Ms. Lindfors had sued Ms. Shelden directly; Ms. Lindfors must present evidence from her own treating physicians and experts in support of causation and damages rather than relying on State Farm's claim evaluation.

---

[53] Docket 114 at 22.

[54] Docket 114 at 23.

[55] Fed. R. Evid. 401.

Ms. Lindfors' arguments to the contrary are unavailing. The mere fact that evidence may fall under a hearsay exception does not shield that evidence from exclusion under other rules of evidence—here, Rule 403. Moreover, if Ms. Lindfors alleges that State Farm's bad-faith actions prevented her from obtaining medical treatment that she would have otherwise sought, she may seek to present evidence in support of that assertion in Phase II. But such evidence shall not be introduced in Phase I unless application is first made outside the presence of the jury and the Court so orders.

### c. Dr. Hofmeister

State Farm also requests that the Court bar references to Dr. Eric Hofmeister, the doctor it retained to conduct an IME of Ms. Lindfors. It maintains that "any reference to Dr. Hofmeister, his opinions or State Farm's decision to withdraw him as a testifying expert should be excluded during Phase 1," asserting that the doctor and his opinions are not relevant to that phase.[56] Further, State Farm suggests that Dr. Hofmeister's IME report would constitute inadmissible hearsay during Phase I.[57]

Ms. Lindfors responds that the IME report and State Farm's withdrawal of Dr. Hofmeister should be admissible during Phase I because "State Farm made admissions that the IME Report was its basis for resolving the disputed claim and

---

[56] Docket 100 at 8.

[57] Docket 130 at 3.

there was no 'basis' for delaying payment after is [sic] reliance on the IME report."[58]

She maintains that she "needs the fact of State Farm's withdrawal to show that [she] was unable to call this key witness live and only has his IME report as the available evidence."[59]  Ms. Lindfors also points to Dr. Hofmeister's conclusion that she may need future steroid injections, asserting that "the fact of State Farm's own IME report adding a category of future medical expense, beyond what was contained in Lindfors' own treating doctor records, cannot be reasonably withheld from the Phase I jury tasked with deciding the extent of Ms. Lindfors' damages."[60]

The Court finds that evidence regarding Dr. Hofmeister and his IME report is inadmissible during Phase I pursuant to Rule 403 for the same reasons discussed above in regard to other aspects of State Farm's claims handling.

### d. Undiscounted Medical Bills

Ms. Lindors requests that the Court admit her full, undiscounted medical bills and appears to request that State Farm be barred from referencing or introducing evidence regarding the fact that her bills were discounted.  She argues that "the actual amount billed is what is relevant to the jury" and asserts that "'undiscounted medical bills' 'without restriction' are admitted 'as evidence of medical services'

---

[58] Docket 114 at 20.

[59] Docket 114 at 20.

[60] Docket 106 at 18.

value.'"[61]  She points to *Weston*, in which the Alaska Supreme Court overturned the trial court's decision to only admit "discounted" versions of the plaintiff's medical bills.[62]  There, the trial court had concluded that the original bills should be excluded because they had been settled by Medicare for less than one-fifth of the amount billed and thus were "inflated" and did not reflect the reasonable value of the medical services rendered.[63]

State Farm responds that it "does not dispute that plaintiff's medical bills can be introduced into evidence, with a proper foundation, and that they provide some evidence of the alleged 'reasonable value' of medical services."[64]  However, the insurer maintains that Ms. Lindfors still has an obligation to otherwise prove the 'reasonableness' of the billed amounts," which "will require plaintiff to explain why some of her health care providers double-billed, and were paid twice, for the same exact treatment and how that would be reasonable." [65]

The Court finds that Ms. Lindfors' undiscounted medical bills are admissible in Phase I and that State Farm is barred by the collateral source rule from referencing to the jury during that phase what Ms. Lindfors' health insurer actually paid to settle the bills.  The parties appear to agree on this matter, and the Court's

---

[61] Docket 103 at 2–3 (quoting *Weston*, 445 P.3d at 1026).

[62] Docket 103 at 3 (citing *Weston*, 445 P.3d 1015).

[63] *Weston*, 445 P.3d at 1019.

[64] Docket 129 at 2.

[65] Docket 129 at 2–3.

Case 3:20-cv-00178-SLG   Document 149   Filed 04/27/22   Page 17 of 39

decision is in line with Alaska's "reasonable value" approach, which allows admission of full, undiscounted medical bills.[66]   Under the reasonable value approach, the defendant may not introduce evidence of the amount the plaintiff actually paid if such evidence would run afoul of the collateral source rule.[67] However, as discussed more extensively above, discounts may constitute a collateral source benefit that is subject to the post-verdict procedure, to be conducted after Phase I, set out in Alaska Statute 09.17.070.[68]

## III.   Both Phases of Trial

### a.  Subrogation Language

State Farm asserts that the Court should exclude any reference to or questions about the subrogation language in Ms. Lindfors' insurance policy.  The relevant subrogation language provides: "If we are obligated under this policy to make payment to or for a person or organization who has a legal right to collect from another person or organization, then we will be subrogated to that right to the extent of our payment."[69]   State Farm notes that it waived its subrogation right when Ms. Lindfors reached a policy limits settlement with the at-fault driver.[70] Thus, the insurer maintains, subrogation is irrelevant to any issue in this litigation

---

[66] *See Weston*, 445 P.3d at 1026–28.

[67] *Id.* at 1028.

[68] *Id.*

[69] Docket 100-1 at 14 (emphasis omitted).

[70] Docket 100 at 5–6 (citing Docket 100-2 (Ex. B)).

and reference to or questions about the policy's subrogation language "will only serve to confuse and mislead the jury."[71]

Ms. Lindfors responds that the policy's subrogation language is potentially relevant "because, to the extent the insurer paid out med pay, the clause infers the insurer must have done so because it was 'obligated . . . under this policy to make payment,'" so "it is premature to rule on references to the subrogation clause until we see if State Farm tries to deny at trial that it had any obligation to pay even med pay."[72]

The Court will exclude the policy's subrogation language from both phases of trial. The language has little to no relevance because State Farm has waived its right to subrogation, and Ms. Lindfors' aforementioned concerns appear unwarranted as the remaining issues in this litigation primarily concern her UIM coverage rather than the med pay coverage.[73] Thus, even assuming *arguendo* that the subrogation language is relevant, its minimal relevance is substantially outweighed by the danger of confusing the issues and misleading the jury.[74]

---

[71] Docket 100 at 6.

[72] Docket 114 at 24.

[73] *See* Docket 100-2; Docket 87 at 23–24 (granting partial summary judgment to State Farm on Ms. Lindfors' breach-of-contract claim under her med pay coverage).

[74] See Fed. R. Evid. 403. If Ms. Lindfors seeks to revisit this decision at trial, she may make application to the Court outside the presence of the jury.

### b. Litigation Conduct

State Farm requests that the Court exclude "testimony, argument, evidence or reference to any discovery disputes between the parties or arguments made in any pleadings or motions filed with the Court."[75]  The insurer maintains that such evidence is not relevant to either phase of the trial and that "any attenuated probative value such evidence might have is far outweighed by the danger of unfair prejudice and jury confusion that would result" because "allowing such evidence would lead to a trial within a trial as to the Court's rules of civil procedure and the Court's decisions with respect to various motions to compel."[76]

By contrast, Ms. Lindfors contends that "[i]t is improper to exclude how State Farm responded to discovery without knowing the specific context of each proffered piece of evidence."[77]  She suggests that State Farm's counsel may have "interfered with or stopped the 'current value' evaluation or mandatory offer process, [which] certainly is highly relevant."[78]  State Farm replies that this contention is merely speculation and that Ms. Lindfors "will be unable to provide any foundation to support such an inadmissible allegation at trial."[79]  At the very least, the insurer contends, "an order should be entered precluding any [reference

---

[75] Docket 100 at 8.

[76] Docket 100 at 8.

[77] Docket 114 at 20.

[78] Docket 114 at 20.

[79] Docket 130 at 4 n.1.

to discovery disputes] without advance application to the Court outside the presence of the jury."[80]

The Court will exclude any reference to discovery disputes and litigation conduct during Phase I as such evidence has no relevance to the amount of Ms. Lindfors' damages. Phase II presents a more difficult question—such evidence would typically be excluded as irrelevant or more prejudicial than probative, but it may have greater probative value in the context of a first-party bad-faith claim. Courts in others jurisdictions have reached differing conclusions as to whether to admit evidence of an insurer's litigation conduct in bad-faith suits.[81] Here, the Court makes a preliminary determination that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay, and will preclude any reference to discovery disputes at Phase II unless otherwise ordered at trial.[82] To that end, Ms. Lindfors may make application to the Court outside the presence of the jury in Phase II if she believes specific instances of State Farm's litigation conduct should be admitted as evidence of bad faith.

---

[80] Docket 130 at 4.

[81] *See, e.g.*, *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 815–16 (Colo. App. 2006) (comparing cases in which courts have allowed the introduction of certain kinds of litigation conduct with cases in which such evidence has been excluded).

[82] *See* Fed. R. Evid. 403; *see also Roesler v. TIG Ins. Co.*, 251 Fed. App'x 489, 498 (10th Cir. 2007) ("Once a lawsuit is filed, to hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense.").

### c. Noneconomic Damages

State Farm requests that the Court preclude "any questions or arguments suggesting that the elements of an award of non-economic damages are 'separate' categories of damages."[83]  The insurer notes that when deposing State Farm's claims personnel, Ms. Lindfors' counsel "asked multiple questions implying or directly stating that each of the elements of a potential award of non-economic damages is a 'separate' category of damages and that a separate award of damages can be made for each of the various elements of non economic damages."[84]  State Farm maintains that such arguments are "legally incorrect," citing Alaska Statute 09.17.010(a), which provides that "[i]n an action to recover damages for personal injury or wrongful death, all damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage."[85]  Further, State Farm points to Alaska's civil pattern special verdict form, which provides only a single line for "[p]ast non-economic loss" and a single line for "[f]uture non-economic loss."[86]  Given all this, the insurer maintains, "[a]ny question or argument suggesting or implying that the jury can

---

[83] Docket 100 at 9.

[84] Docket 100 at 10.

[85] Docket 100 at 9, 11 (quoting Alaska Stat. § 09.17.010(a)).

[86] Docket 100 at 10 (citing *03.21A Special Verdict Form – One Defendant, No Non-Parties*, Alaska Ct. Sys., https://courts.alaska.gov/rules/civilins.htm (last visited Apr. 23, 2022)).

award 'separate amounts' for each of the various elements of noneconomic damages is misleading, confusing and prejudicial."[87]  Ms. Lindfors responds that State Farm's request is "too tortured to be a reasonable limine motion" and that the appropriate time to resolve this issue is "after seeing the parties' respective proposed jury instructions" regarding noneconomic damages.[88]

The Court finds it beneficial to address this dispute now rather than waiting until receiving the parties' proposed jury instructions.  State Farm is correct that under Alaska law, the elements of noneconomic damages do not constitute separate "categories" of damages that may be individually awarded by the jury.[89] Rather, the jury will be instructed that it may award one aggregate amount for past noneconomic damages and one aggregate amount for future noneconomic damages.  The parties are thus barred from making arguments or asking questions before the jury stating or implying otherwise.

### d.  Financial Strain

State Farm requests that the Court exclude "[a]ny argument or suggestion that [Ms. Lindfors'] credit history has been negatively impacted, or that she had any financial strain or financial problems" due to State Farm's alleged delay in resolving her UIM claim because such an argument "would not only be inaccurate

---

[87] Docket 100 at 11.

[88] Docket 114 at 25.

[89] *See* Alaska Stat. § 09.17.010(a).

Case 3:20-cv-00178-SLG   Document 149   Filed 04/27/22   Page 23 of 39

and misleading, but is wholly unsupported by any evidence produced in this case."[90]  The insurer's concern is based on Ms. Lindfors' deposition, during which she testified that she was experiencing "financial strain" due to her health insurer, Aetna, asserting a lien related to her medical bills.[91]  State Farm acknowledges the lien but contends that it has not placed financial strain on Ms. Lindfors because Aetna only seeks to be reimbursed if Ms. Lindfors recovers the sums it paid in this litigation.[92]

Ms. Lindfors responds that "[a] proactive order without regard to what exactly [she] might testify to at trial is unjustified" based simply on a small portion of her deposition testimony.[93]  Further, she maintains that "'evidence of financial strain or financial problems' is relevant in a bad faith case" and asserts that State Farm "[took] financial advantage" of her, pointing to, among other things, State Farm's Offers of Judgment conditioning a settlement on Ms. Lindfors abandoning her legal claims.[94]  In reply, State Farm asserts that "[g]iven the lack of disclosure of any evidence that anything in this lawsuit has had a negative impact on [Ms. Lindfors'] credit . . . , she should not be allowed to introduce such evidence" or should at least "be required to make advance application to the Court before introducing any

---

[90] Docket 100 at 12.

[91] *See* Docket 100 at 11–12 (quoting Docket 100-4 at 2 (Ex. D)).

[92] Docket 100 at 13.

[93] Docket 114 at 27.

[94] Docket 114 at 7–8, 27.

evidence or testimony regarding any alleged adverse impact on her credit history."[95]

Any evidence of financial strain due to the Aetna lien is inadmissible as irrelevant in Phase I, unless application is made to the Court outside the presence of the jury and the Court orders otherwise. The Court will allow such evidence in Phase II, but State Farm may object to specific evidence outside the presence of the jury.

### e. Attorney's Fees

State Farm requests that the Court exclude "[a]ll reference to the amount of attorney's fees [Ms. Lindfors] has or will pay to her attorney" because any such reference is irrelevant and would be unfairly prejudicial because it could "encourage the jury to reach a decision on [Ms. Lindfors'] claims on an improper basis . . . by including an unstated damage amount for attorney's fees."[96] Ms. Lindfors appears to respond that her attorney's fees will be relevant during Phase II if she "wish[es] to rebut the assumption that she has been fully compensated by explaining that her lawyers had to be paid from the liability insurance proceeds or from State Farm's $77,874.12 advance—still making her 'undercompensated.'"[97]

---

[95] Docket 130 at 4–5.

[96] Docket 100 at 13.

[97] Docket 114 at 27.

The Court agrees with State Farm that Ms. Lindfors' attorney's fees are not relevant to the jury's determination during either Phase I or Phase II and as such will be excluded. As stated in this Court's previous order, the award of attorney's fees is a matter for the Court, not the jury,[98] and thus all issues regarding Ms. Lindfors' attorney's fees should only be raised to the Court if and when the jury returns a verdict. The Court will instruct the jury as such in accordance with Alaska's civil pattern jury instructions.[99]

### f. Settlement Offers or Positions

State Farm notes that it has made multiple settlement offers in this case, primarily in the form of offers of judgment, and asserts that evidence regarding these offers and its settlement "positions" should be excluded from evidence under Federal Rule of Evidence 408.[100] Rule 408 provides that evidence of settlement offers and negotiations is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." However, "[t]he court may admit this evidence for another purpose,

---

[98] *See* Docket 87 at 22–23; Alaska R. Civ. 82(d).

[99] *See 02.06 Closing Instructions — Attorney Fees and Costs*, Alaska Ct. Sys., https://courts.alaska.gov/rules/civilins.htm (last visited Apr. 23, 2022) ("The court will decide whether any party should be reimbursed for some or all of the expenses of this lawsuit, including attorney fees. You should not discuss this subject during your deliberations because it has no bearing on any issue that you will decide.").

[100] Docket 100 at 14.

Case No. 3:20-cv-00178-SLG, *Lindfors v. State Farm*
Order re Pending Motions
Page 26 of 39

such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."[101]

Ms. Lindfors responds that Rule 408 "is not a ban on mentioning 'settlement positions'" and contends that "an insurer's settlement position is often the key evidence in deciding if the insurer acted in bad faith."[102]  She notes that Rule 408 only makes settlement offers inadmissible for certain purposes and maintains that she "does not propose to mention State Farm's June 11, 2021 Offer of Judgment as a specific admission that State Farm is 'liable' to the tune of '$206,000'" but rather plans to introduce the offer to show that "State Farm offer[ed] to place money into Ms. Lindfors' hands only on the condition she abandon her bad faith and breach of contract claims."[103]  Further, Ms. Lindfors suggests that State Farm has "opened the door" to admission of its offers of judgment because its claims handling expert Joanna Moore will testify that the insurer's claims handlers exercised "reasonable judgment and common sense when . . . extending a compromise offer."[104]

State Farm replies that it is solely seeking the exclusion of "any evidence regarding Offers of Judgment that have been served during the course of this

---

[101] Fed. R. Evid. 408(b).

[102] Docket 114 at 21.

[103] Docket 114 at 21.

[104] Docket 114 at 21.

litigation" and has not asked the Court to exclude "evidence of [its] evaluations of plaintiff's UIM claim or the offer it made to her, pre-litigation, to resolve that claim during Phase 2."[105] It also concedes that "it may well be relevant whether [it] made any further offers to plaintiff on her UIM claim later in the handling of the claim."[106] However, State Farm maintains that this evidence "can be presented without reference to 'offers of judgment' and the intricacies of such offers," which "cannot be evidence of 'bad faith' in connection with the investigation and evaluation of plaintiff's UIM claim."[107] The insurer contends that Rule 408 precludes such evidence because it would be offered to prove liability and suggests that "[a]llowing a party to argue that the making of an offer of judgment during a lawsuit constitutes 'bad faith' conduct would serve to discourage any efforts to resolve disputed claims."[108]

The Court will exclude all evidence of State Farm's settlement offers during Phase I as those offers would only be relevant for an improper purpose under Rule 408: evidence tending to prove the validity and amount of Ms. Lindfors' disputed UIM claim.[109] In Phase II, the Court will preclude all reference to post-filing Offers of Judgment as substantially more prejudicial than probative.

---

[105] Docket 130 at 5–6.

[106] Docket 130 at 6.

[107] Docket 130 at 6.

[108] Docket 130 at 6.

[109] *See* Fed. R. Evid. 408.

However, Ms. Lindfors may make application to the Court outside the presence of the jury to admit specific Offers of Judgment or portions thereof. This order does not preclude the admission of evidence during Phase II of State Farm's pre-litigation evaluation and offers, as well as any post-litigation offers apart from Offers of Judgment.

### g. Correspondence from Plaintiff's Counsel

State Farm highlights a series of letters to State Farm and its counsel from Mr. Fannon and Mr. Angstamn, Ms. Lindfors' attorneys, and requests that "[a]ll testimony about, or reference to, such letters, including references to, or discussion of, such letters by any retained experts, . . . be excluded from evidence and all other phases of trial."[110] The insurer states that the letters are irrelevant to both phases of trial and "constitute inadmissible hearsay, incorporate hearsay within hearsay and inadmissible opinion testimony, and are unfairly prejudicial."[111] In support of its request, State Farm cites *O'Sullivan v. GEICO*,[112] a bad-faith case in which the District of Colorado excluded all evidence related to correspondence from the insured's counsel to the insurer, concluding that such evidence was inadmissible hearsay and unfairly prejudicial.[113] Here, in particular, State Farm

---

[110] Docket 100 at 15–16, 16 n.14 (citing Docket 100-8 (Ex. H); Docket 100-9 (Ex. I)).

[111] Docket 100 at 16.

[112] Case No. 15-cv-1838, 2017 U.S. Dist. LEXIS 43303 (D. Colo. Mar. 24, 2017).

[113] Docket 100 at 16–17 (citing *O'Sullivan*, 2017 U.S. Dist. LEXIS 43303, at *11–14).

maintains that admitting the letters would be prejudicial because they contain "inflammatory and self-serving assertions of facts and legal conclusions" by Ms. Lindfors' counsel and "are a thinly-veiled character assassination attempt on State Farm and its counsel."[114]

Ms. Lindfors responds that "the contents of a claimant's written demands" and "letters written by . . . claimants to try to persuade an insurer to reconsider its positions" are relevant to bad faith claims.[115] She contends that Mr. Fannon's and Mr. Angstman's letters "can be highly relevant to [State Farm's] 'knowledge' at the time, reflect issues brought to State Farm's attention which the insurer chose to ignore, [and] efforts by the insured to reason with the insurer when it took a position which made no sense."[116]

Pursuant to Rule 403, the Court will exclude the letters during Phase I as they have minimal relevance to the amount of Ms. Lindfors' damages from the accident and are highly prejudicial. The Court will also exclude the letters during Phase II pursuant to Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice. However, Ms. Lindfors may make application to the Court outside the presence of the jury in Phase II if she seeks to revisit this decision with regard to specific letters or portions thereof.

---

[114] Docket 100 at 18 (citing Docket 100-8).

[115] Docket 114 at 23.

[116] Docket 114 at 23.

Case 3:20-cv-00178-SLG   Document 149   Filed 04/27/22   Page 30 of 39

### h. State Farm's Value, Wealth, and Size

State Farm requests that the Court exclude as irrelevant and prejudicial "any reference to its size, wealth, or value until the jury has found that State Farm should be held liable for punitive damages," which it maintains is consistent with Alaska Statute 09.17.020.[117]  That statute outlines a two-phase procedure for awarding punitive damages: In its initial deliberations, the jury decides whether the plaintiff is eligible for punitive damages, and if so, the parties may present additional evidence and arguments regarding whether such damages should be awarded and the amount of the award before the jury deliberates for a second time.  The statute describes certain evidence that the jury may consider at this "separate proceeding" to determine punitive damages, including "the financial condition of the defendant," and provides that, unless relevant to another issue to be decided, discovery of such evidence may not be conducted until after the jury has determined that the plaintiff is eligible for punitive damages.[118]

Ms. Lindfors responds that State Farm's size may be relevant during Phase I "in the context of the insurer not training its adjusters to know anything about what is compensable under Alaska law or when and how offsets factor in" or because "Cindy Morrow, a manager, handles so many hundreds of other claims, she does not have the more intimate knowledge of the claims details as the Claims Specialist

---

[117] Docket 100 at 20.

[118] Alaska Stat. § 09.17.020(c), (e).

does."[119] With regard to Phase II, Ms. Lindfors asserts that she "intends to comply with AS 09.17.020 and State Farm has no basis asking the Court to assume [she] would not follow the normal legal guidelines."[120]

In reply, State Farm reiterates that its size is not relevant to Phase I as that phase will not concern its claims handling, and it suggests that during Phase II, Ms. Lindfors "can inquire how many claims the claims personnel are responsible for handling without getting into impermissible evidence of State Farm's size, value or wealth."[121]

The Court will grant State Farm's request to exclude evidence of its size, value, or wealth from both phases of trial unless and until such evidence becomes relevant to an award of punitive damages at the conclusion of Phase II. In Phase I, evidence of State Farm's size, value, or wealth is not relevant to the jury's determination of what damages were caused by the January 2019 accident. In Phase II, such evidence is arguably relevant "to another issue to be decided,"[122] i.e., State Farm's alleged bad faith. However, as State Farm points out, Ms. Lindfors may reference or inquire about other factors—such as the number of claims that Ms. Morrow handles—that can provide the necessary context for State

---

[119] Docket 114 at 27.

[120] Docket 114 at 28.

[121] Docket 130 at 8.

[122] Alaska Stat. § 09.17.020(e).

Farm's actions without revealing the insurer's size, value, or wealth. Thus, in accordance with Alaska Statute 09.17.020, the Court will exclude such evidence from Phase II until and unless the jury makes an initial determination in Phase II that Ms. Lindfors is eligible for punitive damages.

### i. State Farm's Out-of-State Activities or Income

State Farm requests "an order limiting the scope of conduct that the jury may consider when computing any punitive damages award against State Farm" to State Farm's "actions or conduct that took place only in Alaska and to income State Farm earned based on policies sold in Alaska."[123] The insurer maintains that the U.S. Supreme Court has held that "a state may not impose punitive damages against a party for conduct that did not occur within the state."[124]

Ms. Lindfors responds that "[s]ince State Farm in no way explains what it is talking about, [the request] is too vague and abstract for Plaintiff or the Court to process."[125] She adds that "if State Farm decides out-of-state, at the home office level, to stop investigating and to not make a current value offer, that conduct has direct consequences relative to an Alaska insured and a claim which accrued in Alaska."[126]

---

[123] Docket 100 at 21–22.

[124] Docket 100 at 21 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572–73 (1996)).

[125] Docket 114 at 28.

[126] Docket 114 at 29.

The Court understands State Farm's request to be limited to excluding evidence of the insurer's out-of-state activities *unrelated* to Ms. Lindfors' policy or the handling of her claims, which is consistent with the U.S. Supreme Court's holdings in *Gore* and *State Farm Mutual Automobile Insurance Co. v. Campbell*.[127] Given this understanding, the Court will grant State Farm's request to exclude such evidence.

### j. Arguments on Objections Before Jury

State Farm requests that the Court "not permit, within the jury's presence, any argument in support of or against any evidentiary objection."[128]  Rather, the insurer maintains, "[t]he parties should only be permitted to state the objection and the grounds or rule supporting the objection" in order to avoid prejudice.[129]

Ms. Lindfors responds that "[w]hile proper objections need not concern a jury," she opposes a "'categorical' order" on the matter because objections "could be relevant to the jury in some instances in judging the reliability of the witnesses' answer."[130]  She explains that State Farm's counsel, Ms. Colbo, "frequently made 'speaking objections'" in "an attempt to influence the witnesses' answers" while

---

[127] 538 U.S. 408 (2003).

[128] Docket 100 at 22.

[129] Docket 100 at 22.

[130] Docket 114 at 29–30.

deposing claims personnel and that such objections "can be relevant to the jury assessing bias, credibility, and evasiveness."[131]

The Court will grant State Farm's request; neither party shall make "speaking objections" in front of the jury. Rather, the parties shall concisely state their objection and briefly identify the grounds or rules supporting it while in the presence of the jury; any further arguments regarding the objection must be made only in response to the Court's follow-up inquiry or outside the jury's presence.

### k. Exclusion of Non-Party Witnesses

State Farm seeks to "have all witnesses, except expert witnesses, who are not parties to the litigation excluded from the courtroom until they are called to the stand to testify."[132] Federal Rule of Evidence 615 provides that, at a party's request, a court generally "must order witnesses excluded so that they cannot hear other witnesses' testimony." Ms. Lindfors does not object to State Farm's request.[133] Thus, the Court will grant this request.

### l. Billing Codes

Ms. Lindfors requests that the Court bar State Farm from referring to the billing codes used by her treating physicians.[134] She points to the deposition of

---

[131] Docket 114 at 30.

[132] Docket 100 at 23.

[133] Docket 114 at 30.

[134] Docket 101.

State Farm Team Manager Cindy Morrow, in which Ms. Morrow asserted that Ms. Lindfors' doctor did not believe her shoulder injury stemmed from the January 2019 accident based on billing codes that indicated that the injury involved osteoarthritis.[135] She asserts that State Farm should be barred from making arguments like this or offering billing codes as evidence "without first laying the foundation for the billing code's established meaning by the medical provider whose 'beliefs' or opinions are to be inferred."[136] Further, she contends that any reference to a billing code should be excluded under Rule 403 because (1) "[a] billing code might have been used by a third person with no personal knowledge of Dr. Montano's actual opinions or beliefs;" and (2) rebutting arguments based on billing codes will require her to disclose the fact of her health insurance in Phase I, which is prejudicial.[137]

State Farm responds that the billing codes are relevant evidence in both phases of trial and are "objectively defined code[s] that [are] used by health care providers throughout the United States."[138] The insurer asserts that in Phase I, the information is relevant to cross-examining Ms. Lindfors' treating physicians regarding their opinions on causation and to the jury's consideration of whether the

---

[135] Docket 101 at 3–4 (citing Docket 101-1 at 56–57, 73–76 (Ex. 47)).

[136] Docket 10 at 5 (citing Fed. R. Evid. 104).

[137] Docket 101 at 6–7.

[138] Docket 126 at 3.

medical bills are for treatment of injuries caused by the January 2019 accident.[139] State Farm maintains that the codes can be introduced without reference to Ms. Lindfors' health insurance.[140] The insurer contends that in Phase II, the information is relevant because State Farm considered the billing codes in questioning whether Ms. Lindfors' shoulder injury was caused by the January 2019 accident.[141]

The Court finds that if a proper foundation is laid, the billing codes are admissible in both phases of trial because they are relevant and their probative value is not substantially outweighed by the chance of unfair prejudice. The issues that Ms. Lindfors has raised in her briefing regarding (1) in Phase I, whether such billing codes truly reflect her physicians' opinions and (2) in Phase II, whether State Farm relied on the billing codes to question her shoulder injury during its initial claims handling[142] are questions that can be addressed through direct and cross examination at trial. However, neither party shall make any reference to Ms. Lindfors' health insurance to the jury during Phase I; rather, the parties may ask Dr. Montano about his office's use of the billing codes without indicating that the bills in question were generated for her health insurer.

---

[139] Docket 126 at 1. Ms. Lindfors' primary treating physician, Dr. Montano, is expected to testify regarding causation in Phase I. *See* Docket 148 (Apr. 8, 2022 Order).

[140] Docket 126 at 5.

[141] Docket 126 at 1–2.

[142] *See* Docket 139.

**CONCLUSION**

As set forth herein, State Farm's motion at Docket 92 is GRANTED; State Farm's motion at Docket 99 is GRANTED; State Farm's motion at Docket 100 is GRANTED; Ms. Lindfors' motion at Docket 101 is DENIED; Ms. Lindfors' motion at Docket 102 is DENIED; and Ms. Lindfors' motion at Docket 103 is GRANTED in part and DENIED in part.

In Phase I, the parties shall not make any reference whatsoever to:

(1) Ms. Lindfors' insurance contract with State Farm;

(2) prior payments made by State Farm, Aetna, or Ms. Shelden's insurer;

(3) State Farm's status as Ms. Lindfors' UIM insurer;

(4) State Farm's claims-handling process of both the UIM and MPC;

(5) Dr. Hofmeister and his IME report;

(6) the fact that Ms. Lindfors' medical bills were discounted;

(7) financial strain due to the Aetna lien;

(8) Ms. Lindfors' health insurance; or

(9) State Farm's settlement offers.

As set forth above, the parties may make application to the Court outside the presence of the jury to revisit these rulings as warranted at trial.

If the jury returns a verdict for Ms. Lindfors in Phase I, the Court will conduct a hearing before Phase II to determine the application of offsets and collateral source benefits to the damages.

In both Phase I and Phase II, the parties shall make no reference whatsoever to:

> (1) the subrogation language in Ms. Lindfors' insurance contract;
>
> (2) discovery disputes and litigation conduct;
>
> (3) awarding "separate" damages for each element of noneconomic damages;
>
> (4) Ms. Lindfors' attorney's fees;
>
> (5) State Farm's Offers of Judgment;
>
> (6) letters from Ms. Lindfors' counsel to State Farm;
>
> (7) State Farm's value, wealth, and size; or
>
> (8) State Farm's out-of-state activities or income.

As set forth above, the parties shall make application to the Court outside the presence of the jury to revisit these rulings if warranted by developments at trial.

Further, the parties shall not make arguments on objections before the jury, and all non-party, non-expert witnesses will be excluded from the courtroom.

DATED this 27th day of April, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE